**SMILEY WANG-EKVALL, LLP**
Lei Lei Wang Ekvall, State Bar No. 163047
*lekvall@swelawfirm.com*
Autumn D. Spaeth, State Bar No. 208707
*aspaeth@swelawfirm.com*
Robert S. Marticello, State Bar No. 244256
rmarticello@swelawfirm.com
*Sharon O. Sung, State Bar No. 197573*
*ssung@swelawfirm.com*
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone:    714 445-1000
Facsimile:    714 445-1002

Attorneys for Heide Kurtz,
Plan Trustee

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:12-bk-50767-BR |
| THE WOMAN'S CLUB OF HOLLYWOOD, CALIFORNIA, | Chapter 11 |
| Debtor. | Adv No. 2:13-ap-01854-BR |
| HEIDE KURTZ, Chapter 11 Trustee, | **PLAN TRUSTEE'S OMNIBUS REPLY TO DEFENDANTS' POST-TRIAL BRIEFS** |
| Plaintiff, | |
| v. | |
| JENNIFER MORGAN, an individual, NINA VAN TASSELL, an individual, ALDA SHELTON, an individual, MICHAEL WALLACE, an individual, IAN DUNCAN, an individual, and SHERITA HERRING, an individual, LORRAINE GENOVESE, an individual, BEVERLY STEVENS, an individual, MONI WILMES, an individual, MISSY KELLY, an individual, LAURA ADAMS, an individual, CARMEN HILLEBREW, an individual, JULIET SORCI, an individual, TERESA DARTEZ, an individual, LAURA SESTI, an individual, and DOES 1 through 10, inclusive, | **TRIAL DATES: February 15-17, and March 8-9, 2017**<br>**HEARING DATE: May 17, 2017**<br>**TIME:    10:00 a.m.**<br>**CTRM:  1668** |
| Defendants. | |

*(left margin, vertical text)* SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

2704029.1

PLAN TRUSTEE'S REPLY ISO POST-TRIAL BRIEF

1

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     THE COURT HAS JURISDICTION TO ENTER A FINAL JUDGMENT ................. 2

III.    DEFENDANTS' BREACH OF FIDUCIARY DUTY .............................................. 2

    A.    Defendants Have Presented No Evidence to Contradict Trustee's
    Substantial Evidence That There Was No Board Approval .......................... 2

        1.    Ms. Genovese's Resignation ............................................................. 3

        2.    Mr. Duncan's and Ms. Herring's Sworn Testimony that They
        Did Not Vote to Approve the Objectionable Transactions................. 3

    B.    Morgan and Shelton Simply are Not Credible ............................................. 5

    C.    The Business Judgment Rule Does Not Apply............................................. 7

    D.    Efforts to Rationalize the Scapa Loan and Other Obligations Are
    Untrue and Defy Common Sense ............................................................... 8

    E.    The Club Was Damaged by the Scapa Loan, Which Morgan and
    Shelton Knew the Club Could Not Afford and Which Was in Default
    Under Morgan's and Shelton's Watch ...................................................... 10

    F.    The Plaintiff Has Made No Judicial Admissions ......................................... 10

    G.    No Amendment of the First Amended Complaint Is Necessary ................. 13

    H.    Of the $92,000 in Additional Transfers to Morgan Established by
    Bank Records, Morgan Previously Admitted She Received
    $56,200.00 ............................................................................................... 15

    I.    The Plaintiff Is Entitled to Recovery the $25,000 Transferred to
    Morgan Through Jae Kim........................................................................... 16

IV.     CARMEN HILLEBREW................................................................................... 18

V.      SHERITA HERRING......................................................................................... 20

VI.     MICHAEL WALLACE...................................................................................... 20

VII.    SHELTON'S MALPRACTICE .......................................................................... 21

    A.    Shelton's Breach Is the Cause of the Club's Damages............................. 21

    B.    No Statute of Limitations Defense.............................................................. 22

VIII.   FRAUDULENT TRANSFER.............................................................................. 23

    A.    Reasonably Equivalent Value ................................................................... 23

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

B.      Insolvency ................................................................................................ 27

IX.    DAMAGES ................................................................................................ 27

X.     CONCLUSION ........................................................................................... 27

SMILEY WANG-EKVALL, LLP

3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

*Ash v. Wallenmeyer,*
    879 F2d 272 (7th Cir. 1989) .................................................................15

*Berg & Berg Enterprises, LLC v. Boyle,*
    178 Cal.App.4th 1020, 100 Cal.Rptr.3d 875 (6th Dist. 2009) ...................8

*Bollinger v. National Fire Ins. Co.,*
    25 Cal. 2d. 399 (1944) ..........................................................................22

*Cananwill, Inc. v. EMAR Grp., Inc.,*
    250 B.R. 533 (M.D.N.C. 1999) ..............................................................13

*Catholic Soc. Servs., Inc. v. Ashcroft,*
    268 F. Supp. 2d 1172 (E.D. Cal. 2002) .................................................15

*City of Vista v. Robert Thomas Securities, Inc.,*
    84 Cal.App.4th 882 (2000) ....................................................................22

*Gaillard v. Natomas Co.,*
    208 Cal. App. 3d 1250 (1989) .................................................................8

*Hardin v. Manitowoc-Forsythe Corp.,*
    691 F.2d 449 (10th Cir.1982) ................................................................14

*Heritage Bank. v. Redcom Laboratories, Inc.,*
    250 F.3d 319 (5th Cir. 2001) .................................................................13

*Holt Civic Club v. City of Tuscaloosa,*
    439 U.S. 60 (1978) ................................................................................15

*In re 3dfx Interactive, Inc.,*
    389 B.R. 842 (Bankr. N.D. Cal. 2008) ...................................................23

*In re Grigonis,*
    208 B.R. 950 (Bankr. D. Mont. 1997) ....................................................23

*In re Intelligent Direct Mktg.,*
    No. 2:09-CV-02898 JAM, 2014 WL 4678304, at *7 (E.D. Cal. Sept. 19,
    2014) .......................................................................................................8

*In re Kemmer,*
    265 B.R. 224 (Bankr. E.D. Cal. 2001) .............................................15, 23

*Madeja v. Olympic Packers, LLC.,*
    310 F.3d 628 (9th Cir. 2002) .................................................................15

*Matter of Beaubouef,*
    966 F.2d 174 (5th Cir. 1992) .................................................................14

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ♦ Fax 714 445-1002

*Molsbergen v. United States,*
    757 F.2d 1016 (9th Cir. 1985) ............................................................................12

*New Amsterdam Cas. Co. v. Waller,*
    323 F.2d 20 (4th Cir.1963) ...............................................................................13

*Oki America, Inc. v. Microtech Int'l, Inc.*, 872 F.2d 312, 314 (9th Cir. 1989) ...................12

*Palm Springs* Villas *II Homeowners Ass'n, Inc. v. Parth,*
    248 Cal. App. 4th 268 (2016) ...............................................................................7

*Pension Transfer Corp. v. Beneficiaries Under Third Amendment to Fruehauf
    Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.),*
    444 F.3d 203 (3d. Cir. 2006) ...............................................................................24

*R.M.L.,*
    92 F.3d at 148-149 (3d Cir. 1996) ......................................................................23

*See Galindo v. Stoody Co.,*
    793 F2d 1502, fn. 8 (9th Cir. 1986) ....................................................................14

*Thomson v. Canyon,*
    198 Cal.App.4th 594 (2011) ...............................................................................22


**STATUTES**

11 U.S.C. § 108 ...............................................................................................................22

11 U.S.C. § 548 .........................................................................................................23, 24

Cal. Corp. Code § 5233(a) ................................................................................................4

Cal. Corp. Code § 5233(d)(2)(C) ......................................................................................4


**OTHER AUTHORITIES**

Amended and Supplemental Pleadings,
    Prac. Guide Fed. Civ. Proc. Before Trial (Nat Ed) Ch. 8-F.................................15


**RULES**

Fed. R. Civ. Proc. 15(b) ..................................................................................................15

Fed. R. Civ. Proc. 54(c) ..................................................................................................15

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE,**

2  **DEFENDANTS AND THEIR COUNSEL:**

3      Heide Kurtz, the plan trustee ("Plaintiff" or "Trustee") for The Woman's Club of

4  Hollywood, California ("Debtor" or "Club") hereby submits her omnibus reply to the trial

5  briefs that were filed by defendants Jennifer Morgan ("Morgan"), Alda Shelton

6  ("Shelton"), Michael Wallace ("Wallace"), Carmen Hillebrew ("Hillebrew"), and Sherita

7  Herring ("Herring") (together, the "Defendants").

8

9  **I.      INTRODUCTION**

10      Make no mistake - Morgan, Shelton, and Van Tassell assumed control of the Club,

11  an organization with a rich history spanning over 100 years, **and destroyed it**.  Morgan,

12  Shelton and Van Tassell owed fiduciary duties to the Club to act in good faith and in the

13  Club's best interest, as opposed to their own, which they had no intention of doing.  The

14  fact that the misconduct of Morgan, Shelton, and Van Tassell constituted a breach of

15  their fiduciary duties is supported by the overwhelming weight of the evidence in the

16  record.

17      Defendants' post-trial briefs make no effort to disprove or contradict any of this

18  evidence.  Instead, Defendants hope the Court will ignore all of the evidence of their

19  breach, bad acts and lies, by asking the Court to misapply hyper-technical pleading rules.

20  Pleading rules are intended solely to provide parties with general notice of claims

21  asserted against them and are not intended to prevent the application of justice when the

22  evidence presented at trial establishes wrongdoing and liability.

23      This case is simple, despite Defendants' attempts to obfuscate their wrongdoing.

24  Certain of the Defendants sought to control the Club and its valuable real property for

25  their own personal benefit.  When they were about to lose control of the Club to a

26  receiver and despite the issuance of a restraining order, these Defendants placed

27  hundreds of thousands of dollars of liens on the Club's real property for their own benefit.

28  Then, when no one was looking, they burdened the Club with a $700,000 hard money

loan to remove these liens, pay themselves, and provide a fund with which to pay their

anticipated future legal expenses.  Jennifer Morgan and Alda Shelton have lied about

their conduct ever since.  It is time for them to finally be held responsible for the

consequences of their actions.  If this Court determines that the other defendants are

lying about their non-participation in these events, they too should be held liable for the

damages caused to the Club by these reckless, unnecessary, and unaffordable self-

interested transactions that devastated the Club under their watch.[1]

## II.    THE COURT HAS JURISDICTION TO ENTER A FINAL JUDGMENT

Defendants Morgan and Shelton cannot avoid a judicial determination on the

claims of this case by belatedly arguing this Court does not have jurisdiction to hear the

breach of fiduciary duty and malpractice claims which arise from the same facts as the

fraudulent transfer and other Bankruptcy Code-based causes of action.  Pursuant to 28

U.S.C. section 157(b)(c) and (e), the Court may hear all of the claims asserted in this

case.  In addition, in the June 7, 2016 Joint Status Report [Docket No. 254], all

Defendants, including Shelton, stated their consent to the Court's entry of a final

judgment and/or order in this adversary proceeding.

## III.    DEFENDANTS' BREACH OF FIDUCIARY DUTY

### A.    Defendants Have Presented No Evidence to Contradict Trustee's Substantial Evidence That There Was No Board Approval

Defendants fail to present any evidence to contradict substantial evidence that

there was no board approval for the Scapa Loan, the Morgan Note and Deed of Trust,

the Carl Von Randallhoff loans, Shelton's $100,000 retainer or Morgan's six-figure salary.

Defendants' only argument to the contrary is that they did not have a copy of Lorraine

Genovese's resignation letter, and that Duncan and Herring were sent emails after the

---

[1] Trustee believes the length of this post-trial brief is controlled by Local Rule 9013-2(b)(1) which
states, "a brief must not exceed 35 pages in length,…"

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 ♦ Fax 714 445-1002

1  fact which contain references to the Scapa Loan, and they did not protest.  Neither of

2  these facts is remotely sufficient to create a credible doubt about the lack of board

3  authority, much less establish disinterested board approval for these self-interested

4  transactions.

5              **1.    Ms. Genovese's Resignation**

6          Ms. Genovese testified at trial that she did not attend the board meetings at issue

7  because she had resigned.  Ms. Genovese produced her resignation letter and

8  authenticated it under penalty of perjury.  Ms. Genovese is not a recipient of the

9  November 2011 or 2012 emails between Morgan and Shelton produced to the Trustee by

10 Edna Jones and attached as exhibits to Ms. Jones' trial declaration.  Morgan's and

11 Shelton's claim that they do not have Ms. Genovese's resignation letter is meaningless.

12 There is no reason for Morgan or Shelton to have Ms. Genovese's letter when Morgan

13 has repeatedly testified that she does not have the Club's books and records and would

14 not know whether it is a part of the Club's records.  The feeble defense offered by

15 Morgan and Shelton validates Ms. Genovese's sworn testimony.  There is no basis to

16 disbelieve Ms. Genovese's trial testimony, when the *only* contradictory evidence is the

17 self-serving testimony of Morgan and Shelton, two individuals who, in the past, have

18 presented perjurious testimony and claims to this Court.

19             **2.    Mr. Duncan's and Ms. Herring's Sworn Testimony that They Did

20                    Not Vote to Approve the Objectionable Transactions**

21         Both Duncan and Herring testified under oath that they did not vote to approve the

22 objectionable loans, compensation, and transfers.  Morgan's and Shelton's only argument

23 to undermine their credible testimony is that they did not respond to emails that were sent

24 by Morgan after the Scapa Loan in late 2011 and 2012.  The lack of a response months

25 after the alleged board votes, however, does not prove that they had, in fact, voted to

26 approve the objectionable loans and compensation.  Duncan testified that he did not

27 respond to the emails because by that time, he was no longer actively participating on the

28 board and, in fact, thought he was no longer a board member.  Herring testified that she

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  did not respond to the emails because she was no longer actively participating on the

2  board.

3        Their complete lack of response to these emails has no relevance and does not

4  prove consent, much less prior consent to the transactions as is required by the

5  California Corporations Code for self-interested transactions.  The board's approval of the

6  objectionable loans, compensation and transfers had to be obtained *prior* to the

7  transactions.  *See* Cal. Corp. Code § 5233(a).  A self-dealing transaction may pass

8  muster if "[p]rior to consummating the transaction …the board authorized or approved the

9  transaction in good faith by a vote of a majority of the directors then in office without

10  counting the vote of the interested director or directors, and with knowledge of the

11  material facts concerning the transaction and the director's interest in the transaction."

12  Cal. Corp. Code § 5233(d)(2)(C).  As such, in order to have approved the transactions, a

13  majority vote of the directors then in office must have been obtained through only

14  disinterested board members.  Consent, after the fact and not in conformity with the

15  bylaws (no properly noticed meeting, no meeting, no voting, etc.), does not meet the

16  statutory requirements for approval and cannot substitute for the proper board approval.

17  Here, the appropriate board approvals were never obtained.

18        Moreover, it would be unreasonable to conclude there was consent, or worse yet,

19  board approval, from the lack of a response to emails.  The emails at issue were sent by

20  Morgan at a time when Duncan and Herring were no longer actively involved.  The emails

21  were not addressed to Duncan or Herring, but rather to Shelton.  Duncan and Herring

22  were merely copied on the emails.  The subject lines of the emails did not put them on

23  notice that anything was needed from Duncan or Herring.  Therefore, rather than

24  evidence of consent, it is entirely logical to conclude that they simply ignored the emails

25  (as they testified under penalty of perjury) and for that reason did not respond.

26        It would be erroneous to conclude that such an equivocal act (or lack of action)

27  constituted or evidenced Duncan's and Herring's votes to approve the objectionable

28  loans, compensation, and transfers.  Duncan and Herring have provided sworn testimony

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  that they did not vote to approve the objectionable loans, compensation, and transfers,

2  and it is evident from the record that the board did not vote to approve the objectionable

3  loans, compensation, and transfers.

4       **B.    Morgan and Shelton Simply are Not Credible**

5       Morgan and Shelton simply are not credible.  By their own words, they are shown

6  to have made materially false statements to this court.  During trial, Shelton's client, her

7  co-defendant Michael Wallace, testified to the authenticity of Plaintiff's Exhibit 120, an

8  email chain between him and Morgan, between April 20, 2011 and April 23, 2011.  These

9  emails establish that Morgan and Shelton have lied about board approval related to two

10  important items.  These emails establish that Morgan and Shelton lied about when

11  Morgan signed Shelton's engagement letter, and therefore, are purposefully concealing

12  when Shelton's involvement with the Club began.  These emails also establish that

13  Morgan lied about her role in possessing and preparing board resolutions, thereby

14  purposefully concealing her opportunity (and potentially Shelton's) to fabricate their

15  contents.

16       First, these emails (Plaintiff's Exhibit 120) establish that Morgan and Shelton have

17  lied about two other important items: board approval of the second Carl Von Randallhoff

18  Loan in April 2011 for $25,000 and board approval of Morgan's rejection of the Quick

19  Plaintiff's April 21, 2011 settlement offer to dismiss the Quick Action.  On the evening of

20  April 21, 2011, Wallace told Morgan that the last board meeting was April 5, 2011.

21  Plaintiff's Exhibit 120, p. 10.   This establishes that the Board did not have a Board

22  meeting between April 5, 2011 and April 21, 2011.

23       Therefore, contrary to the trial testimony of Morgan and Shelton, the Board did not

24  meet and vote to approve the second Carl Von Randallhoff Loan, for $25,000, which was

25  recorded on April 18, 2011.  This is supported by the testimony of Genovese and

26  Stevens, who resigned by April 15, 2011, that they did not to approve a second loan from

27  Von Randallhoff.  Both Duncan and Herring testify that they did not approve a second

28  loan either.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    The board did not meet and vote to approve Morgan's rejection of the Quick

2    Plaintiff's April 21, 2011 settlement offer before she rejected it that same day.  Therefore,

3    Morgan is lying about her authority to reject the settlement offer.  This occurred prior to

4    the Club incurring any of the large debt in May-August 2011.  This settlement offer would

5    have ended the litigation against the Club and removed the need to borrow any more

6    money to pay attorneys' fees to defend the case.  It also would have removed Morgan

7    and Van Tassel (and therefore Shelton) from control.

8    Second, these emails provide damning evidence that Morgan and Shelton have

9    lied regarding the timing of Shelton's involvement in the case.  Both have testified under

10   oath that Shelton's engagement began when her engagement letter was signed by

11   Morgan in or about May 1, 2011.  Shelton's invoices reflect a small amount of work in

12   April 2011.  However, these emails establish that Morgan signed Shelton's engagement

13   on March 21, 2011, and suggest her involvement began before that.  Morgan stated to

14   Wallace, "I did not sign her retainer until March 21 because I had to get authority from the

15   board [on about March 15, 2011]."  Plaintiff's Exhibit 120, p. 11.  Morgan has lied, either

16   to this Court or to Wallace.  Shelton also has lied about the date her involvement began.

17   Therefore, both are purposefully concealing the timing of when Shelton began to play a

18   part in the events at issue.  At a minimum, Morgan was consulting with Shelton regarding

19   the Club by no later than mid-March 2011.

20   Third, these emails also establish that Morgan lied about her role in possessing

21   and preparing board resolutions, thereby purposefully concealing her opportunity (and

22   potentially Shelton's) to fabricate their contents.  These emails establish that Morgan

23   prepared all the board resolutions personally, rather than Wallace who was the Club's

24   secretary.  *Id.,* at p. 10.  Morgan did so months after the alleged vote to approve the

25   resolutions occurred, not at the time to make sure they accurately reflected the Board's

26   approval.  *Id.,* at p. 10-11.  These emails establish Morgan had the Club's Minute Book in

27   her sole possession for over four months, roughly January 2011 through April 2011,

28   despite the repeated requests of Wallace to return it.  *Id.,* at p. 10.  Throughout her

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  involvement with the Club, Morgan has sought to shield herself from accusations of

2  falsifying records by asserting the Minutes and Resolutions were prepared by others and

3  maintained at the Clubhouse.  But these emails establish she was in control and

4  possession of the documentation all along, including the January through April 2011 time

5  period.

6        This one email chain between Morgan and Wallace serves as just one piece of

7  evidence that Morgan and Shelton have lied about important facts such as board

8  approval of loans; have lied about the Club having no alternative but to take out these

9  loans in order to defend the Club; have lied about their role in preparing and controlling

10  possession of the Club's board resolutions; which these emails reveal have been falsified

11  to indicate board authority where it did not exist.  In short, there is no reason this Court

12  should consider these two defendants to have any credibility.

13      **C.**    <u>**The Business Judgment Rule Does Not Apply**</u>

14        Defendants are not protected by the business judgment rule because they did not

15  undertake the steps necessary to avail themselves of the business judgment rule.

16      The common law 'business judgment rule' refers to a judicial policy of
   deference to the business judgment of corporate directors in the exercise of
17  their broad discretion in making corporate decisions.  Under this rule, a director
   is not liable for a mistake in business judgment which is made in good faith
18  and in what he or she believes to be the best interests of the corporation,
   where no conflict of interest exists. … Notwithstanding the deference to a
19  director's business judgment, the rule does not immunize a director from
   liability in the case of his or her abdication of corporate responsibilities.

20

21  *Palm Springs* Villas *II Homeowners Ass'n, Inc. v. Parth*, 248 Cal. App. 4th 268, 279–80

22  (2016) (internal citations omitted).

23        Here, the Defendants completely abdicated their corporate responsibilities to the

24  Club and were reckless or grossly negligent.  In such a context, the business judgment

25  rule does not serve as a defense.  As the court in *Palm Springs* went on to note:

26      The question is frequently asked, how does the operation of the so-called
   'business judgment rule' tie in with the concept of negligence? There is no
27  conflict between the two. When courts say that they will not interfere in matters
   of business judgment, it is presupposed that judgment—reasonable
28  diligence—has in fact been exercised. A director cannot close his eyes to what

1  
2  
3  

is going on about him in the conduct of the business of the corporation and have it said that he is exercising business judgment. … Thus, the exercise of reasonable diligence is one of the 'factual prerequisites' to application of the business judgment rule.

4  *Id.* (internal citations omitted).  Simply stated, the business judgment rule does not

5  protect a decision until it is first established that reasonable diligence was used in making

6  the decision in the first place.  The business judgment rule does not protect decisions

7  made with willful ignorance.  *See Gaillard v. Natomas Co.*, 208 Cal. App. 3d 1250, 1263

8  (1989).

9       Similarly, an exception to the business judgment rule exists "in 'circumstances

10  which inherently raise an inference of conflict of interest' and the rule 'does not shield

11  actions taken *without reasonable inquiry*, with improper motives, *or as a result of a*

12  *conflict of interest.*' "  *In re Intelligent Direct Mktg.,* No. 2:09-CV-02898 JAM, 2014 WL

13  4678304, at *7 (E.D. Cal. Sept. 19, 2014) (*citing Berg & Berg Enterprises, LLC v. Boyle*,

14  178 Cal.App.4th 1020, 1045, 100 Cal.Rptr.3d 875 (6th Dist. 2009) (emphasis added)

15  (finding the business judgment rule does not apply because there is a conflict of interest).

16       In this case, the business judgment rule does not shield the Defendants who

17  violated their duty of care, obedience and loyalty. The Scapa Loan and the insider

18  obligations it paid were all self-interested transactions.  There is no evidence of the

19  Board's reasonable inquiry, or disinterested analysis and votes, all of which are

20  necessary to establish a safe harbor for the Defendants.

21      **D.**     **Efforts to Rationalize the Scapa Loan and Other Obligations Are**

22            **Untrue and Defy Common Sense**

23       Morgan and Shelton attempt to justify the Scapa Loan by arguing that they had no

24  alternative because the Club "had to defend the litigation," keep Morgan employed, and

25  renovate the clubhouse.  There is <u>no</u> evidence that a disinterested board considered

26  these justifications and then proceeded to approve these insider transactions.  Moreover,

27  these justifications are untrue and defy common sense.

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

8    PLAN TRUSTEE'S REPLY ISO POST-TRIAL BRIEF

1     During the trial, as established by Plaintiff's Exhibit 315, on April 21, 2011, the

2  Quick Plaintiffs offered to settle the litigation against the Club if Morgan would cease her

3  involvement in the Club.  Morgan denied that settlement offer that same day, without

4  informing the Board about it, and without the Board ever having considered or voted on it.

5  Shortly thereafter, the Club became saddled with the third Carl Von Randallhoff Loan of

6  $100,000, the $100,000 Morgan Note and Deed of Trust, and Shelton's $120,000 in

7  retainers.

8     The quick rejection of the settlement offer by Morgan without informing the Board

9  of the offer is evidence that Morgan was advancing her own self-interest above the

10  interest of the Club.  She wanted to stay in control of the Club's assets.  The Board,

11  however, had it been informed of the possibility of a settlement by removing Morgan, may

12  have decided to accept the settlement.  If the Quick Action had been settled, there would

13  have been no "need" for the third Carl Von Randallhoff Loan of $100,000, the $100,000

14  Morgan Note and Deed of Trust, and Shelton's $120,000 in retainers.  The claimed

15  "need" for the loans and for keeping Morgan is merely in furtherance of Morgan's self-

16  interest and not to advance the Club's best interest.

17     Morgan and Shelton assert, without any evidence, that roughly $193,000 was

18  spent on renovating the Club.  The Trustee has submitted multiple pieces of evidence

19  that the amount actually spent on renovations was far less.  Whatever the amount, less

20  than $200,000 in renovations does not in any way justify a $700,000 high interest, short

21  term, hard money loan with a $7,000 per month interest-only payment that no one

22  disputes the Club could not afford.

23     The Trustee has more than amply demonstrated the Defendants' breach of their

24  duties.  There is no logical or rational justification for the Club incurring the Scapa Loan, a

25  loan no one disputes cannot be repaid, to benefit insiders.

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E.**    **The Club Was Damaged by the Scapa Loan, Which Morgan and Shelton Knew the Club Could Not Afford and Which Was in Default Under Morgan's and Shelton's Watch**

Defendants attempt to blame the court-appointed receiver for the damages to the Club by non-payment of the Scapa Loan.  However, the non-payment of the Scapa Loan began while Morgan and Shelton were in control of the Club.  The foreclosure documents reflect that the Club stopped making payments on the Scapa Loan in early 2012, and as such began accruing unpaid interest as of April 16, 2012.[2]  Turnover of possession to the court-appointed receiver occurred on or about June 8, 2012.  Similarly, it is uncontested that the only source of the Club's few payments to Scapa was the Scapa Loan proceeds itself.  As such, the Club's damages from its inability to afford the Scapa Loan began at the loan's inception - while the Club was under the control of Morgan and Shelton.  It is clear, before the Scapa Loan was even obtained, that the Club had zero ability to repay a $700,000 high-interest loan.  Even Shelton admits that some of the money borrowed from Scapa was done to service the loan because the Club could not afford it.

**F.**    **The Plaintiff Has Made No Judicial Admissions**

Because there is no corroborated evidence justifying their actions, Defendants now seek to preclude substantial evidence presented at trial that establish their misdeeds.  Specifically, Defendants seek to preclude evidence that there was no disinterested Board approval of their actions and that they misused, misappropriated, mismanaged and wasted Club assets.  In this effort, Defendants blatantly misrepresent the Trustee's First Amended Complaint and ignore Federal Rule of Civil Procedure 8(d).  Defendants argue that Plaintiff's First Amended Complaint did not allege that the Board did not approve the Scapa loan.  *See* Jennifer Morgan's Post-Trial Brief, Docket No. 549, at 3: 4-5 ("Plaintiff's never-before-pleaded theory that the Board did <u>NOT</u> approve the Scapa loan is a pivotal argument in Plaintiff's closing brief and one of the bases for the

---

[2] Trial Exhibit 233, p. 3314; Main Bankruptcy Case Docket No. 442, Exh. 1, p. 67.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  damages; Post Trial Brief of Alda Shelton and Michael Wallace, Docket No. 548 at 9, ln.

2  3-4 ("Kurtz's never-before-pleaded theory that the Board did NOT approve the Scapa

3  loan".)

4          To the contrary, the First Amended Complaint [Docket No. 92] specifically pleaded

5  a breach of fiduciary duty claim against the Defendants for several acts, including failure

6  to obtain proper Board approval, misuse of Club assets, gross mismanagement and

7  misappropriation of Club assets, and waste of the Club's assets.

8          Specifically, the First Amended Complaint pleaded as follows:

9              96.  The Trustee is informed, believes, and alleges that, the
Defendants breached said duties through the conduct described
10           above, specifically approving the wrongful conduct described
above.  **These breaches include, but are not limited to, the**
11           **following:** (a) causing the Debtor to incur debts to insiders that
were beyond the Debtor's ability to pay; (b) causing the Debtor
12           to grant security interests on the Debtor's Property (including to
insiders) in amounts that exceeded the actual underlying
13           obligations and without consideration; (c) causing the Debtor to
borrow $700,000 from Scapa at a high interest rate with hard
14           money loan terms at a time when it did not have the ability to
repay the obligation in order to repay other obligations that were
15           not due to insiders; (d) **causing the misuse of the Scapa Loan
Proceeds**; … (f) **acting for the benefit of individuals on the**
16           **Board of Directors rather than the Debtor**; (g) **gross
mismanagement of the Debtor and misappropriation of its**
17           **assets**; (h) **waste of the Debtor's assets**; … and **(k) failing to
obtain proper and non-interested Board approvals for**
18           **insider transactions**.

19  Similarly, paragraph 41 of the First Amended Complaint alleged, "At this time, there is no

20  evidence that payment of Morgan's alleged compensation was included in the Board

21  approved uses of these loan proceeds."  Paragraph 57 of the First Amended Complaint

22  alleged as follows, "There is no record of a disinterested negotiation between the Board

23  and Van Tassell or Von Randallhoff regarding the terms of the alleged [second $25,000]

24  loan or the granting of the security interest.  There is no record of a disinterested vote to

25  approve the alleged loan or the security interest by the Board of Directors."

26          Moreover, Plaintiff's Trial Brief [Docket No. 381] specifically discusses these

27  issues and her supporting evidence.  Pages 14-15 and 19 discuss breach of fiduciary

28  duty by causing the Club to incur unauthorized obligations, specifically discussing that no

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  Board member admitted to voting to approve the Scapa Loan or the obligations it paid.

2  This evidence is based largely on deposition testimony of the defendants.  There is no

3  surprise or prejudice here.

4          In addition, a plaintiff is allowed to plead alternative, inconsistent theories.  Federal

5  Rule of Civil Procedure 8(d)(2), applicable to this adversary proceeding through Federal

6  Rule of Bankruptcy Procedure 7008, provides: "[a] party may set out 2 or more

7  statements of a claim or defense alternatively or hypothetically, either in a single count or

8  defense or in separate ones.  If a party makes alternative statements, the pleading is

9  sufficient if any one of them is sufficient"; Federal Rule of Civil Procedure 8(d)(3): "[a]

10  party may state as many separate claims or defenses as it has, regardless of

11  consistency."  Based on the Federal Rules of Civil Procedure and Ninth Circuit

12  precedent, such inconsistent allegations do not constitute judicial admissions that

13  preclude Plaintiff from arguing in her post-trial brief that the Board did not approve the

14  Scapa loan.  *See Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985) ("In

15  light of the liberal pleading policy embodied in Rule 8(e)(2) [later amended to Federal

16  Rule of Civil Procedure 8(d)(2)], we hold that a pleading should not be construed as an

17  admission against another alternative or inconsistent pleading in the same case under

18  the circumstances present here."; *see also Oki America, Inc. v. Microtech Int'l, Inc.*, 872

19  F.2d 312, 314 (9th Cir. 1989) *(holding that* "One of two inconsistent pleas cannot be used

20  as evidence in the trial of the other because a contrary rule would place a litigant at his

21  peril in exercising the liberal pleading . . . provisions of the Federal Rules.") (citation and

22  internal quotes omitted).

23          In addition, Defendants did not identify or argue the applicable legal standard for a

24  statement in a pleading to be treated as a judicial admission.  To be treated as a judicial

25  admission, a statement must (1) be made in a judicial proceeding; (2) be deliberate,

26  clear, and unequivocal; (3) concern a fact on which a judgment for the opposing party

27  may be based; (4) conflict with a fact essential to the theory of recovery; and (5) be such

28  that giving it conclusive effect meets with public policy.  *See Heritage Bank. v. Redcom*

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1    *Laboratories, Inc.*, 250 F.3d 319, 329 (5th Cir. 2001).  Here, element two is not met

2    because the First Amended Complaint's factual allegations statements are not

3    "unequivocal."  Rather, the Trustee pled alternative theories of liability.  Also, the Plaintiff

4    is a trustee, which, by the position's very nature, is a third party to the events at issue.

5    She has no personal knowledge of the events described prior to her appointment in the

6    case and must rely upon information and documentation provided to her.  As such, the

7    First Amended Complaint's allegations are based upon "information and belief" that

8    existed at the time of its filing.

9        Defendants also fail to establish the fifth factor because to agree with Morgan's

10    and Shelton's position would conflict with the public policy of liberal pleadings embedded

11    in Federal Rule of Civil Procedure 8, as well as the public policy of having issues

12    determined on the merits.

13        Judicial admissions serve a highly useful purpose in dispensing with proof of

14    formal matters and of facts about which there is no real dispute.  That is not the case

15    here.  Whether there was proper, disinterested board approval has always been at the

16    heart of this case.  The evidence at trial on this issue was substantial.  However, even if

17    the Court were to determine that the First Amended Complaint contained a judicial

18    admission by the Trustee's allegations, the Court, unquestionably, has the right to relieve

19    a party of his judicial admission if it appears that the admitted fact is clearly untrue and

20    that the party was laboring under a mistake when he made the admission.  *See New*

21    *Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir.1963); *Cananwill, Inc. v. EMAR*

22    *Grp., Inc.*, 250 B.R. 533, 543 (M.D.N.C. 1999).

23        **G.    No Amendment of the First Amended Complaint Is Necessary**

24        Similarly, Morgan and Shelton cannot avoid the damning evidence of their

25    wrongdoing by arguing the Plaintiff should have amended the First Amended Complaint.

26    The First Amended Complaint puts into issue allegations Shelton and Morgan hope to

27    avoid: breach of fiduciary duty for causing the Club to incur the Scapa Loan, Morgan's

28    Deed of Trust, the $150,000 Von Randallhoff Note and Deed of Trust, and the $25,000

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

Second Von Randallhoff Loan without obtaining the necessary and proper approvals of a disinterested Board.  The allegations in the First Amended Complaint are also broad enough to compass the evidence presented at trial that Morgan wrongly transferred and personally kept $25,000 originally transferred from escrow to attorney Jae Kim and Morgan's wrongful receipt of over $92,000 in cash and debit card payments by the Club.

In addition to those allegations described in Section F above, Paragraph 75 of the First Amended Complaint alleges, "The Trustee is informed, believes, and alleges…Debtor's insiders [including Morgan] obtained a high-interest, hard money-loan…to prematurely and inappropriately pay themselves on account of their alleged "loans" or deferred compensation…"  Paragraph 91 alleges, "The Trustee is informed, believes, and alleges that throughout her time with the Debtor, including after the filing of the instant bankruptcy case, Morgan used the assets of the Debtor for her own purposes."  Finally, the Twentieth Claim for Relief is a claim for conversion against Morgan.  Although it specifically references the $6,400 taken by Morgan post-petition by redirecting the Debtor's mail to her home, it incorporates all prior allegations in the complaint and placed Morgan on notice that she was subject to a claim for converting the assets of the Club.

Pleadings may be amended to conform to proof at trial when claims or defenses not raised by the pleadings "are tried by the parties' express or implied consent." *See* FRCP 15(b)(2).  In such cases, no formal amendment is required. The court may amend the pleadings merely by entering findings on the unpleaded issues. *See Galindo v. Stoody Co.,* 793 F2d 1502, 1513 fn. 8 (9th Cir. 1986).  As is made clear by Rule 15(b), "[e]ven where there is no consent, and objection is made at trial that evidence is outside the scope of the pretrial order, amendment may still be allowed unless the objecting party satisfies the court that he would be prejudiced by the amendment."  *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 457 (10th Cir.1982); *Matter of Beaubouef,* 966 F.2d 174, 177 (5th Cir. 1992).

1    Moreover, the judgment may be upheld on any theory supported by the facts

2   proved, whether or not pleaded.  Every (nondefault) final judgment "should grant the relief

3   to which each party is entitled, even if the party has not demanded that relief in its

4   pleadings."  *See Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 65-66 (1978); Fed. R.

5   Civ. Proc. 54(c); *see also* Amended and Supplemental Pleadings, Prac. Guide Fed. Civ.

6   Proc. Before Trial (Nat Ed.) Ch. 8-F.

7    Failure to amend damage allegations or prayers for relief does not preclude relief

8   in a contested action. The court may award whatever relief in whatever amount the party

9   proves he or she is entitled to at trial. *See* Fed. R. Civ. Proc. 54(c); *see also Madeja v.*

10  *Olympic Packers, LLC.*, 310 F.3d 628, 636 (9th Cir. 2002)("… the district court clearly

11  considered these claims on the merits, making Appellants' Rule 15(b) motion irrelevant.");

12  *Catholic Soc. Servs., Inc. v. Ashcroft*, 268 F. Supp. 2d 1172, 1191 (E.D. Cal. 2002)("As

13  plaintiffs note, however, Arizaga did not verify the complaint, and both parties admit that

14  he has testified that he visited the INS and was told that he did not qualify because he

15  had left the country. Thus, under Fed.R.Civ.P. 15(b), the complaint is amended to

16  conform to the evidence that Arizaga did go to the INS and seek to apply."); *In re*

17  *Kemmer*, 265 B.R. 224, 230 (Bankr. E.D. Cal. 2001)("Moreover, pleadings may be

18  amended to conform to proof at trial. Failure to amend does not affect the outcome

19  because a judgment may be upheld on any theory supported by the facts proved, even if

20  not set forth in the pleadings."); *Ash v. Wallenmeyer,* 879 F2d 272 (7th Cir. 1989) (not

21  essential to amend to reflect damages disclosed in discovery); Amended and

22  Supplemental Pleadings, Prac. Guide Fed. Civ. Proc. Before Trial (Nat Ed.) Ch. 8-F.

23   To the extent the evidence at trial establishes Defendants' liability and/or Plaintiff's

24  damages, Plaintiff requests that the pleadings be amended to conform to proof at trial.

25  **H.**  **Of the $92,000 in Additional Transfers to Morgan Established by Bank**

26       **Records, Morgan Previously Admitted She Received $56,200.00**

27   Approximately $91,856.53 in additional payments to the benefit of Morgan were

28  established by the JP Morgan bank account statements that were moved into evidence

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

on the first day of trial.  In her post-trial brief, Morgan does not deny or controvert that she

received approximately $92,000 in payments from the Club, both from checks written to

her and through the use of the Club's debit card or withdrawals of cash.    Morgan

previously admitted to this court that she received $56,200.00 in transfers as payments

on her "contracts" with the Club.  *See* Exhibit 177, p. 907 ("Amounts Received Against

Contracts with Woman's Club" reflecting $56,200 received from 2/1/11-1/31/2012).  It has

now been established that Morgan had no employment contract with the Club.  As such,

based upon the JP Morgan bank records and Morgan's own admissions, there can be no

real dispute that Morgan received almost $100,000 in addition to the $120,000 she

obtained from the Scapa Loan on her deed of trust given in connection with her bogus

alleged employment contract.

I.       **The Plaintiff Is Entitled to Recovery the $25,000 Transferred to Morgan**

         **Through Jae Kim**

         Morgan cannot avoid the consequences of having stolen $25,000 of Club property

that she funneled through her friend, attorney Jae Kim.  Although Mr. Kim evaded service

of a trial subpoena and the Court has not yet ruled on the Plaintiff's request to use his

deposition testimony,  Morgan's own deposition testimony[3] establishes that Morgan did

not obtain board approval for the transfer, kept the $25,000 upon obtaining its return from

Kim, and did not use the funds for the Club.  *See* Deposition of Jennifer Morgan (July 1,

2016)[4], pp. 338-347.

         Morgan did not obtain board approval of the transfer of $25,000 to Mr. Kim.  *See*

Deposition of Jennifer Morgan (July 1, 2016), Page 339:10-13 (cannot say for sure if

there was a board vote approving the transfer of $25,000 to Kim for Morgan's defense

costs).  Morgan kept the $25,000.  *See* Morgan Depo., p. 341:7-8 (Did not retain Kim.

---

[3] Morgan sat for deposition on June 30 and July 1, 2016, only after Trustee prevailed over Morgan and
Shelton's frivolous motion to quash the deposition notices of the remaining defendants and Trustee was
forced to file and win a motion to compel their depositions.

[4] Relevant portions of which are included in Plaintiff's Notice of Deposition Testimony of Jennifer
Morgan, Docket No. 378, filed December 28, 2016.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  Obtained the $25,000 back from him); p. 344:18 ("I did not deposit it.  I cashed the

2  money."); p. 342:15-16 ("I cashed it, and I kept it, and I used it—some of it I gave to the

3  club, some of it I kept."); p. 345:2-8 ("Now, I know you will laugh at this.  I have a little box

4  at home, and I put it in there….Yeah, I have the box today."); p. 346:13-14 ("I did not

5  know if I could get a loan.  And, so, for me, it was my insurance.")

6     Morgan did not return the $25,000 to the Club.  When pressed to confirm the Kim

7  money was used to cover the bounced electrician check, Morgan admitted it was not.

8  *See id.,* p. 344:5-8 ("No, no, no, they—I had them [the electrician] re-deposit the check…I

9  could be telling you a huge, big lie about it, …I remember that's what prompted me to go

10  get the money [from Kim].")  Therefore, contrary to Morgan's Post-Trial Brief, she

11  previously testified she did not use the $25,000 Kim funds to pay the Club's electrician.

12     Morgan also implies that she used the $25,000 from Kim to pay attorney Joel

13  Tamraz $25,000.  It is apparent that the $25,000 from Kim is not the source of either the

14  payments to Tamraz or the electrician because, despite repeatedly and specifically

15  implying this is the case, when pressed to identify specific Club expenses she paid with

16  the $25,000 from Kim, Morgan repeatedly failed to identify either Tamraz or the

17  electricians.  *See id.*, at p. 342:9-10 ("So I used the money when I needed it to fund the

18  club stuff.  ***Little things***.")(emphasis added); p. 346: 4-7 ("I do not.  **I do not know**

19  **specifically**."); p. 345:16-17 ("…and **I can't tell you how much of it I used for The**

20  **Woman's Club, as I sit here today**.")(emphasis added).

21     In short, Morgan surreptitiously transferred $25,000 to Kim and quickly obtained it

22  back from him in the suspiciously unusual method of three different checks,  did not

23  deposit into Club accounts, but rather, cashed them and kept the money in a box at her

24  home, which is still there today.  This is just one more example of Morgan's falsifications,

25  breaches of fiduciary duty, and stealing from the Club.

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## IV.    **CARMEN HILLEBREW**

Carmen Hillebrew was named as a defendant in this case because documents reflected that she was on the board and participated in the following relevant board meetings and votes: (1) February 2010 during the take-over of the Club[5]; (2) January 2011[6] where there was an alleged vote to change the Club's by-laws and a board election; (3) July 2012[7] when she voted in and was elected in a board election; (4) November 2012[8] when she again voted in and was elected in a board election shortly before the filing of the instant bankruptcy case.  Hillebrew's ballot in the November 2012 election reflects that she voted to "ratify, affirm and approve all financial actions taken by Nina Van Tassell…and Jennifer Morgan as CEO from February 2010 through November 17, 2012, all of which actions were done with Board approval…and waive any damages associated with those actions…"[9]  All of this evidence implicated Ms. Hillebrew in the events at issue in the First Amended Complaint which span from February 2010 through the filing of this bankruptcy case.

Hillebrew remains a defendant in this case because, unlike the dismissed defendants, Hillebrew refused to meet with the Trustee or provide any information that established her lack of involvement with the material events of the case, despite the existence of conflicting documentation.  During her deposition, in May 2016, Hillebrew vehemently and repeatedly denied under oath that she voted to approve Morgan's salary, the Carl Von Randallhoff Loans, the Scapa Loan, the Morgan Note and Deed of Trust, or to approve the filing of the instant bankruptcy case.  Similarly, her post-trial brief contends that had "no participation in nor contemporaneous knowledge of Club bankruptcies and

---

[5] First Amended Complaint ("FAC"), Exh. 1.

[6] FAC, Exhs. 10-11.

[7] Trial Exhibit 127, p.. 34.

[8] FAC, Exh. 28, pp. 270-273; Trial Exhibit 174, pp.502-504; Trial Exhibit 230, pp. 2909-2911.

[9] FAC, Exh. 28, pp. 270-273; Trial Exhibit 174, pp.502-504; Trial Exhibit 230, pp. 2909-2911

1   loans…"  Hillebrew therefore denies not only voting to approve the filing of this instant

2   bankruptcy but also of having any contemporaneous knowledge of this bankruptcy case.

3        Her testimony conflicts with the documents attached to the First Amended

4   Complaint, and the testimony of Morgan and Shelton who have made many claims

5   including that the board in February 2010 hired Morgan, and repeatedly agreed to pay

6   her salary, that Morgan had contracts with the Club for her six figure a year salary, and

7   that the Board voted in December 2012 to approve their filing of the instant bankruptcy

8   case.  Both Morgan and Shelton previously proffered Hillebrew's November 2012 ballot

9   as true and correct to this Court, which reflects her election to the Board just prior to this

10  bankruptcy filing.[10]  Either Morgan and Shelton are telling the truth, or Hillebrew is telling

11  the truth, but not both.

12       One of the aspects of the Trustee's breach of fiduciary duty claim is that the board

13  would have been grossly negligent if it voted to approve paying Morgan a six-figure

14  salary due to the financial condition of the Club and the lack of any effort to determine a

15  reasonable salary for Morgan.  Trustee is in agreement that Hillebrew should not be

16  found liable for breach of fiduciary duty, based upon the record now before the Court, <u>if

17  the Court makes the following factual findings</u>: (1) Morgan did not have approval to pay

18  her six-figure salary by the February-May 2010 Board (which included Hillebrew); (2) that

19  the November 2012 ballot of Hillebrew (Trial Exhs. 174, pp. 502-504; 230, pp. 2909-

20  2911) is a falsified document not reflecting the vote or signature of Ms. Hillebrew; (3) that

21  Hillebrew took no actions during her service on the Board that breached her fiduciary

22  duties to the Club; and (4) that Hillebrew's deposition and trial testimony is credible.

23  Trustee is in agreement that Hillebrew should not be found liable for breach of fiduciary

24  duty, based upon the record now before the Court, if the Court makes the following legal

25  findings: (1) Hillebrew's actions as a member of the board of directors from February

26  through May 2010, and July 2012 and afterward, were not grossly negligent and did not

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

28  [10] Trial Exhibit 174, pp.502-504; Trial Exhibit 230, pp. 2909-2911

1  result in damage to the Club; (2) that the November 17, 2012 ballot does not result in the

2  ratification of Morgan's conduct and waiver of damages by the Club against Morgan; or

3  (3) that the July 2012 and November 2012 elections were not held by a court-appointed

4  receiver and approved by the Superior Court in the Quick Action, and therefore did not

5  create a valid board of directors for the Club.

6

7  ## V.    SHERITA HERRING

8        The evidence submitted at trial is sufficient to establish that Sherita Herring did not

9  vote to approve the Scapa Loan, Morgan's Note and Deed of Trust, the second or third

10  Carl Von Randallhoff Loans, or Shelton's $120,000 in retainers.  As discussed above,

11  Morgan and Shelton's arguments regarding Ms. Herring's receipt of and lack of response

12  to emails from Morgan after the Scapa Loan occurred, are insufficient to establish an

13  prior, informed, disinterested board vote as is required for self-interested transactions.  If

14  the Court does not believe Ms. Herring is truthful, then she too is liable for breach of

15  fiduciary duty.

16

17  ## VI.    MICHAEL WALLACE

18        The evidence submitted at trial is sufficient to establish that Michael Wallace was

19  an active member of the board of directors during the relevant times.  Despite this fact,

20  his trial declaration fails to provide any evidence of board votes or even touch on any of

21  the most important events at issue in the case.  Morgan asserts that Wallace testified that

22  he approved the Scapa Loan.  However, as the evidence outlined in Appendix A to the

23  Trustee's Post-trial Brief reflects, that is not the case.  As such, Wallace's testimony is

24  insufficient to establish an prior, informed, disinterested board vote as is required for self-

25  interested transactions.  Since Wallace admits to being an active member of the board at

26  the relevant times, provides no evidence to establish a board vote, nor does he deny

27  knowledge of the Scapa Loan and the other at-issue obligations, Wallace is liable for

28  breach of fiduciary duty.

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

## VII.    SHELTON'S MALPRACTICE

### A.    Shelton's Breach Is the Cause of the Club's Damages

Shelton's breach of her professional duties as the Club's attorney is the "but for" cause of the Club's damages.  Malpractice is professional negligence: in short, breach of a professional's fiduciary duties to her client.  Shelton seeks to limit the Trustee's malpractice claim to breach on account of specific legal advice, but the Trustee's claim is not so limited.  Paragraphs 101 and 102 of the First Amended Complaint assert malpractice for her role in (a) *causing* or counseling the Debtor to incur debts to insiders that were beyond the Debtor's ability to pay; (b) *causing* or counseling the Debtor to grant security interests on the Debtor's property (including to insiders) in amounts that exceeded the actual underlying obligations...(c) *causing* or counseling the Debtor to borrow $700,000 from Scapa…"[11]

Shelton's involvement with the Club began by no later than March 21, 2011.[12]  In April 2011, Ms. Genovese and Ms. Stevens formally resigned from the Board.  In April 2011, Mr. Duncan and Ms. Herring state that they were no longer actively participating on the board.  This leaves Morgan, Van Tassell and Wallace as the only remaining board members.  Shortly thereafter, Shelton became the lawyer for Morgan, Van Tassell and the Club.  Simply stated, there was no one outside their control left to challenge Morgan's, Van Tassell's and Shelton's actions, or to say what was or was not approved by the Board.

With no one left to challenge them, the Club borrowed an additional $25,000 from Carl Von Randallhoff that went to attorneys to assist Morgan's and Van Tassell's control of the Club.  Then, still with no one left to challenge them, the Club borrowed an additional $100,000 from Carl Von Randallhoff, the majority of which went to attorneys, Morgan and Shelton.  Still in control, Morgan was given (or took) a $100,000 Deed of

---

[11] FAC, p. 29.

[12] Trial Exhibit 120, p. 11.

1  Trust against the Club's property.  The Club then borrowed $700,000 and paid off Van

2  Tassell/Von Randallhoff, paid Morgan, and paid Shelton.  No one else was involved and

3  no one outside their control knew anything about it.

4      The timing of Shelton's involvement directly coincided with all of these unapproved

5  and damaging loans and deeds.  They did not occur prior to her involvement.  She was

6  the tool needed to keep the court-appointed receiver at bay for as long as possible.

7  Considering the totality of the circumstances, the evidence presented at trial is more than

8  sufficient to establish that, but for Shelton's breach of her fiduciary duties to the Club as

9  its attorney, none of these unapproved obligations would have been incurred on behalf of

10  the Club.

11      **B.    No Statute of Limitations Defense**

12      Shelton has no statute of limitations defenses.  California Civil Procedure Code

13  section 340.6 states that the statute of limitations for professional negligence, other than

14  actual fraud, is one year from discovery or four years from the wrongful act or omission,

15  whichever occurs first.  Also, where damages are an element of a cause of action, as in

16  the case of malpractice, the cause of action does not accrue until the damages have

17  been sustained.  When the wrongful act does not result in immediate damage, "the cause

18  of action does not accrue prior to the maturation of perceptible harm."  *Thomson v.*

19  *Canyon,* 198 Cal.App.4th 594 (2011) (*citing City of Vista v. Robert Thomas Securities,*

20  *Inc.,* 84 Cal.App.4th 882, 886 (2000)).

21      Shelton continued to represent the Club and remained in control of the Club with

22  Morgan until the appointment of the chapter 11 trustee, after the case was filed.  This

23  continued representation and control, for all intents and purposes, delayed the discovery

24  of Shelton's malpractice and contributed to the delay in the Club's ability to file suit

25  against her until after the chapter 11 trustee was put in place by this Court.  *See Bollinger*

26  *v. National Fire Ins. Co.*, 25 Cal. 2d. 399, 411 (1944).  As a result, the statute of

27  limitations did not run prior to the filing of this bankruptcy case and  11 U.S.C. § 108

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  extends the period within which a cause of action may be brought to two years after the

2  petition date.

3

4  **VIII.   FRAUDULENT TRANSFER**

5      Defendants seek to avoid liability for the consequences of their conduct by arguing

6  that the First Amended Complaint does not state a fraudulent transfer claim for the entire

7  amount of the Scapa Loan.  Trustee admits that the fraudulent transfer claims asserted in

8  the First Amended Complaint were pled to seek damages for the specific amounts

9  transferred from escrow to each defendant, rather than the entire Scapa loan amount. As

10  such, Trustee agrees to limit her damages request to those amounts.  However, Trustee

11  believes that the evidence presented at trial sufficiently establishes Morgan and Shelton's

12  fraudulent transfer liability on the entire Scapa Loan, if the Court is inclined to amend the

13  complaint to conform to proof at trial.

14      **A.     Reasonably Equivalent Value**

15      Given the totality of the circumstances, the Club did not obtain reasonably

16  equivalent value in exchange for the Scapa Loan, the $120,000 paid to Morgan from

17  escrow, the $157,000 to paid to Van Tassell/Von Randallhoff from escrow, or the

18  $100,000 paid to Shelton from escrow.  In situations such as this, where questionable

19  circumstances led to the transfer, Courts look to the totality of the circumstances to

20  determine reasonably equivalent value under 11 U.S.C. § 548.  *See, e.g., In re 3dfx*

21  *Interactive, Inc.*, 389 B.R. 842 (Bankr. N.D. Cal. 2008), subsequently aff'd, 585 Fed.

22  Appx. 626 (9th Cir. 2014); *In re Kemmer*, 265 B.R. 224 (Bankr. E.D. Cal. 2001); *In re*

23  *Grigonis*, 208 B.R. 950 (Bankr. D. Mont. 1997).  "In conducting this factual analysis [of

24  whether a debtor received reasonably equivalent value], a court does look to the 'totality

25  of the circumstances,' including (1) the 'fair market value' of the benefit received as a

26  result of the transfer, (2) 'the existence of an arm's length relationship between the debtor

27  and the transferee,' and (3) the transferee's good faith."  *R.M.L.*, 92 F.3d at 148-149, 153

28  (3d Cir. 1996).  In a case with factual similarities to this, the Third Circuit upheld a District

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  Court decision in *In re Fruehauf Trailer Corp.*, finding a transfer that benefited those that

2  approved it to be a fraudulent transfer under Section 548. *See Pension Transfer Corp. v.*

3  *Beneficiaries Under Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003*

4  *(In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 212-213 (3d. Cir. 2006) (holding that based

5  on the totality of the circumstances, including evidence of inadequate board presentation,

6  proposal of amendment by beneficiaries/transferees, redundant value of transfer, and

7  fact that beneficiaries/transferees reviewed/proposed the amendment and thus, transfer

8  was not conducted at arm's length, the District Court correctly found a lack of reasonably

9  equivalent value as to pension plan amendment).

10    The Debtor entity, Freuhauf, froze the calculation of retirement benefits for all

11  employees at 1991 salary levels. Freuhauf's outside counsel drafted an amendment to

12  Freuhauf's pension plan. The amendment was reviewed by Tinger (Fruehauf's VP of

13  HR) and Fehr (a senior Fruehauf executive), both of whom were members of Fruehauf's

14  Pension Administrative Committee. The amendment applied almost entirely to managers

15  and executives, and provided a lifting of the 1991 benefit freeze for those employees who

16  were vested in the pension plan and calculated benefits based on 1996 salaries, and it

17  granted all covered employees a cash contribution to their pension account equal to 5%

18  of annual salary plus 8% annual interest if certain conditions were met. Notably, Tigner

19  and Fehr, who were the only Fruehauf executives to review the amendment and who

20  were also beneficiaries of the Key Employee Retention Program, stood to reap

21  substantial benefits from its adoption. The board approved this amendment at an

22  emergency board meeting in September 1996. Fruehauf filed for Chapter 11 and was

23  liquidated through a plan. Fruehauf commenced an adversary proceeding against the

24  pension plan alleging that payouts under the amendment would result in fraudulent

25  transfers. The District Court found that amendment was a fraudulent transfer under

26  11 U.S.C. § 548.

27    The Court of Appeals upheld the District Court's decision and reasoned as follows:

28  The District Court found that the manner in which the amendment was presented to the

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1   board for approval, and the fact that the amendment's sponsors stood to benefit

2   significantly from its implementation strongly weighed in favor of finding that the

3   amendment did not provide reasonably equivalent value to Fruehauf based on the

4   following: even if the Court accepted the defendants' assertion that the amendment was

5   intended to retain employees, the fact that it and another key employee retention plan

6   that was also recently implemented, cost twice as much as a typical employee retention

7   plan, in an industry with very few other jobs to which employees might go, tends to prove

8   that Fruehauf did not pay market value for the benefit received; that the benefits inured

9   substantially to corporate insiders; that the amendment was reviewed by those who stood

10  to gain between 200% and 500% in their pension benefits if it were approved, suggest

11  that the transaction was not conducted at arm's length; finding the amendment from the

12  union-side pension plan surplus-without informing the unions or even raising with them

13  the possibility of pension increases for their members, coupled with the fact that the

14  amendment was presented to the board inaccurately as an "administrative formality" that

15  required no discussion nor a cash expenditure, strongly suggests that the amendment

16  was not a "good faith" transaction.

17       Notably, the Court of Appeals and the District Court both found that redundant

18  value conferred, under the totality of the circumstances, supported findings of

19  overpayment, lack of arms-length negotiation, and lack of good faith.  "The District Court

20  correctly found that … the value the Amendment did confer was largely redundant of the

21  value conferred by the KERP and, based on the totality of the circumstances, the Third

22  Amendment as an employee retention device was overpriced, not negotiated at arm's

23  length, accrued substantially to the benefit of corporate insiders, and was not

24  implemented in good faith."  *Id.* at 216.

25       There are a number of similarities to this case.  In *Freuhauf,* the fact that the

26  amendment's sponsors stood to benefit significantly from its implementation strongly

27  weighed in favor of finding that the amendment did not provide reasonably equivalent

28  value to Fruehauf.  In this case, Morgan, Van Tassell, and Shelton obtained the Scapa

1  Loan when they were the ones who individually stood to significantly benefit from the

2  loan, receiving more than half of the loan proceeds directly from escrow.  The same can

3  be said for the Morgan Note and Deed of Trust, and the Carl Von Randallhoff Loans.  In

4  *Fruehauf* there was evidence of board approval-but the court found it inadequate due to

5  the lack disinterestedness.  Here, the evidence establishes that there was no

6  disinterested board approval.  In *Fruehauf*, redundant value conferred by the transferor

7  weighed in favor of a finding of overpayment, lack of arms-length negotiations, and lack

8  of good faith.  Here, Morgan received both a $100,000 note and deed of trust allegedly in

9  payment of her past due salary, as well as payment on the note and deed of trust with

10  interest from the Scapa loan.  The same can be said for the Carl Von Randallhoff Loans.

11  The value Morgan and Van Tassell received was redundant, and it deepened the Club's

12  insolvency.  In *Fruehauf* the board approval occurred in an emergency board meeting.

13  Here, Morgan and Shelton assert the transfers were approved at emergency board

14  meetings.

15      In addition to the *Fruehauf* indicia of lack of reasonably equivalent value, in this

16  case there are additional facts that suggest this finding.  First, Morgan obtained these

17  funds for an alleged salary that was unjustified and not approved by the Board.

18  According to the Club's tax returns, no previous Club employee was ever paid a six figure

19  salary to operate the Club and the Club could not afford to pay such a salary.  No one

20  saw Morgan's resume or confirmed her employment history or salary history.  The only

21  evidence as to these items still today, is Morgan's uncorroborated trial testimony.  This

22  Court never approved paying Morgan a six-figure salary in any of the four bankruptcy

23  cases that were filed during her involvement.  Moreover, Shelton, an attorney with an

24  obvious conflict of interest, as counsel for both the Club and Morgan, allegedly handled

25  the negotiations between Morgan and the Club as to her past-due salary.  This same

26  attorney just happened to also receive $20,000 and the promise of an additional

27  $100,000 from the Club, at the same exact time.  Under these circumstances, there is no

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

1  evidence that Morgan or Shelton were paid fair market value, after negotiations at arm's-

2  length, and in good faith.

3  **B.    <u>Insolvency</u>**

4  Both Morgan and Shelton fail to respond to Trustee's evidence of the Club's cash

5  flow insolvency during the relevant period.  Instead, they seek to deflect by arguing

6  balance sheet insolvency.  As this court is well aware, fraudulent transfer is established

7  through either type.  Trustee has met her evidentiary burden in this regard.

8

9  **IX.    <u>DAMAGES</u>**

10  Shelton objects to the Trustee's reliance on Trial Exhibits 185-192 on the basis

11  that no witness authenticated these exhibits.  However, these trial exhibits are

12  declarations of Alda Shelton, filed in this bankruptcy case, attached to Trustee's

13  Amended Request for Judicial Notice, and were admitted into evidence on Day 4 of the

14  trial.

15

16  **X.    <u>CONCLUSION</u>**

17  Based on the foregoing, the Plan Trustee requests that the Court enter judgment

18  in favor of the Plan Trustee on all causes of action, with the exception of the twenty-third

19  and twenty-fourth causes of action, which have either been resolved or are moot.

20

21  DATED:  May 4, 2016                    SMILEY WANG-EKVALL, LLP

22

23                                              By:  ___/s/ *Autumn D. Spaeth*_____

24                                                      AUTUMN D. SPAETH
                                                         Attorneys for Heide Kurtz,
                                                         Plan Trustee

25

26

27

28

SMILEY WANG-EKVALL, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Tel 714 445-1000 • Fax 714 445-1002

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**3200 Park Center Drive, Suite 250, Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **PLAN TRUSTEE'S OMNIBUS REPLY TO DEFENDANTS' POST-TRIAL BRIEFS WITH PROOF OF SERVICE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **May 4, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **May 4, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Hon. Barry Russell
United States Bankruptcy Court
255 E. Temple Street, Suite 1660
Los Angeles, CA 90012

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **May 4, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SERVICE VIA EMAIL:**
Carmen Hillebrew    carmencarmen999@gmail.com
Jennifer Morgan    jennifermorgan013@gmail.com
Sherita Herring    sherita@sheritaherring.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 4, 2017 | Carol Sheets | /s/ *Carol Sheets* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:

•John A Demarest      jad@hssalaw.com, ysm@hssalaw.com
•Lei Lei Wang Ekvall      lekvall@swelawfirm.com,
csheets@swelawfirm.com;gcruz@swelawfirm.com;hdavis@swelawfirm.com
•Beth Gaschen      bgaschen@wgllp.com,
kadele@wgllp.com;lfisk@wgllp.com;lgauthier@lwgfllp.com;nlockwood@lwgfllp.com;tziemann@wgllp.com
•Heide Kurtz (TR)      trustee@hkurtzco.com, C169@ecfcbis.com
•Robert S Marticello      Rmarticello@swelawfirm.com,
csheets@swelawfirm.com;gcruz@swelawfirm.com;hdavis@swelawfirm.com
•Alda Shelton      aldashelton@yahoo.com
•Autumn D Spaeth      aspaeth@swelawfirm.com,
gcruz@swelawfirm.com;csheets@swelawfirm.com;hdavis@swelawfirm.com
•Sharon Sung      ssung@swelawfirm.com, gcruz@swelawfirm.com,hdavis@swelawfirm.com,csheets@swelawfirm.com
• United States Trustee (LA)      ustpregion16.la.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    **F 9013-3.1.PROOF.SERVICE**